**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

**DONALD T. PALLETT,**                    )
                                          )
        **Plaintiff,**                    )
                                          )
        **v.**                            )        **CIVIL NO. 3:09CV819**
                                          )
**MICHAEL J. ASTRUE,**                    )
**Commissioner of Social Security,**      )
                                          )
        **Defendant.**                    )
_____)

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Donald T. Pallett, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying his application for Social Security Disability ("DIB").  The Commissioner's final

decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not

disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket no. 6) and motion to remand (docket no. 7) be DENIED; that

Defendant's motion for summary judgment (docket no. 11) be GRANTED; and that the final

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his current application for DIB on December 21, 2006, claiming disability due to rheumatoid arthritis and problems with his right knee. (R. at 109-110, 149.) Initially, Plaintiff alleged that the disability's onset date was August 25, 2006. (R. at 109-110.) The date was amended, however, to January 1, 2007, to correspond with the first full month in which Plaintiff was not employed. (R. at 40.) The date was amended a second time to July 1, 2007, which was after his unemployment benefits expired. (R. at 54-56.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 71-72, 80-82.) On January 6, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 41-70.) On March 18, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 17-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to

determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

that the claimant can perform.  <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  <u>Id.</u>  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. at 12.)  At steps two and three, the ALJ found that Plaintiff had the severe impairment of psoriatic arthritis, but that this impairment did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 12-14.)  The ALJ next determined that Plaintiff had the RFC to perform light work, except that he could not work in an environment where he would be exposed to dampness or extreme cold temperatures.  (R. at 14-17.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a truck driver, construction worker, or equipment operator because of the levels of exertion required in each position.  (R. at 17.)  At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 17-18.)  Specifically, the ALJ found that Plaintiff could work as a mail sorter or counter clerk.  (R. at 18.)  Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits.  (R. at 19.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the

alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ improperly discounted the opinion of Plaintiff's treating physician; (2) the Appeals Council failed to consider new and material evidence; (3) the ALJ improperly evaluated the Plaintiff's credibility; and (4) the ALJ relied upon flawed vocational expert testimony. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 16-24.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-21.)

1. **Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating physician.**

Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Moon, Plaintiff's treating physician. (Pl.'s Mem. at 16-20.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20

C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Moon opined on November 2, 2007, that Plaintiff "suffers from Psoriatic Arthirits, which cause's (sic) him chronic pain and leaves him unable to work."[6] (R. at 487 (emphasis in original.)) The ALJ assigned "little weight" to Dr. Moon's opinion because he had opined on an issue reserved for the Commissioner (namely, the ultimate determination of disability), and further, because she found his opinion to be inconsistent with Plaintiff's testimony and with the medical records of record. (R. at 16-17.) Specifically, as to the inconsistencies between Dr. Moon's opinion and the medical records, the ALJ stated as follows:

> Diagnostic examinations of the claimant's knees bilaterally, hands bilaterally and feet bilaterally, lumbar spine and sacroiliac joints have been for the most part

---

[6] This is the entirety of Dr. Moon's opinion as of the time of the ALJ's decision, aside from a letter written one year later in November 2008 that states that Plaintiff was diagnosed with inflammatory arthritis by his rheumatologist in 2002; that he has been seen and managed for his disability by his rheumatologist; and that any requests for details about Plaintiff's diagnosis and treatment should be referred his rheumatologist. (R. at 487, 491.) Dr. Moon later provided a functional evaluation that Plaintiff presented to the Appeals Council (and will be discussed below), but that evaluation was not available at the time of the ALJ's decision, which is the subject of this review.

normal, except for some minor issues (Exhibits 5F and 13F). Further, several examinations by Dr. Moroianu have revealed that the claimant had no synovitis in his upper or lower extremities, and that his knees bilaterally had a full range of motion, and no effusion, warmth or erythema (Exhibits 20F, 24F, and 25F). Dr. Moroianu has noted that the claimant's psoriasis was controlled with medication (Exhibit 24F). Dr. Moroianu has also opined on two different occasions that there was a discrepancy between the claimant's pain and the other physical findings in examinations (Exhibit 19F and 24F). Dr. Moon's opinion is further inconsistent with his own letter of November 2008, stating that the claimant had been diagnosed with arthritis by rheumatology. Dr. Moon further stated for any details regarding the claimant's diagnosis, treatment or prognosis that Premier Healthcare Associates and Dr. Moroianu should be contacted (Exhibit 23F).

(R. at 16-17.)

Plaintiff argues that the ALJ's discussion of the medical evidence is insufficient and her conclusions lack merit. (Pl.'s Mem. at 17.) Specifically, Plaintiff asserts that, although the ALJ stated that she found Dr. Moon's opinion to be inconsistent with the records and diagnostic findings, she did not specifically state what about Dr. Moon's opinion was inconsistent. (Id. at 17-18.) However, it is clear from the ALJ's decision, and specifically the language quoted above, that she identified what medical evidence she found to be inconsistent with Dr. Moon's opinion. (R. at 16-17.) Therefore, her conclusion based on the stated inconsistency is supported by substantial evidence in the record. (R. 360, 364, 374-75, 377, 457, 466, 481-82, 494-95.)

Plaintiff further argues that the ALJ should have attempted to further develop the record by obtaining a functional evaluation from Dr. Moon and a treating specialist (a Dr. Moroianu) if she felt that Dr. Moon's letter opinion was inadequate. (Pl.'s Mem. at 18-19.) Plaintiff asserts that the ALJ found a lack of opinion from Dr. Moon and Dr. Moroianu to be significant. (Pl.'s Mem. at 18-19; Pl.'s Reply at 3.) However, no where in the ALJ's decision is there any such indication that the ALJ attached any significance to the absence of functional evaluations by the

treating physicians, and the Plaintiff does not cite a reference to that effect.[7]  The ALJ may seek

additional evidence when the evidence from the Plaintiff's treating physician or other medical

source is inadequate for the ALJ to determine whether the Plaintiff is disabled, but the ALJ does

not need to further develop the record if the existing evidence is sufficient for such a

determination.  20 C.F.R. § 404.1512(e).  As earlier noted, the ALJ explained in her decision that

she rejected Dr. Moon's opinion because it was not corroborated.  (R. at 16-17.)  She therefore

correctly held that the evidence in the record was sufficient for her to make a determination on

Plaintiff's claim for benefits, and she was not required to further develop the record.

Additionally, Plaintiff asserts that the ALJ failed to address the five factors set forth in

Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006), for the evaluation of medical opinions.

(Pl.'s Mem. at 19.)  Those factors are: (1) whether the physician has examined the claimant; (2)

the treatment relationship between the physician and the claimant; (3) the supportability of the

physician's opinion; (3) the consistency of the opinion with the record; and (5) whether the

physician is a specialist.  Hines, 453 F.3d at 563.  According to the Plaintiff, an evaluation of the

factors weighs in favor of giving deference to Dr. Moon's opinion because he examined the

Plaintiff; he treated the Plaintiff on a regular basis; his opinion is supported by his findings as

well as those of the treating specialist, Dr. Moroianu; his opinion is both internally consistent

and consistent with the record; and although Dr. Moon is not a specialist, he relied upon, and

deferred to, the findings of the treating specialist.  (Pl.'s Mem. at 19.)  Although the ALJ did not

expressly cite Hines in her decision, her analysis is based upon application of the Hines factors.

_____

[7] Plaintiff emphasizes the argument throughout his motion for summary judgment in conjunction with his other arguments.  Because the Court does not find that the ALJ attached significance to the absence of a functional evaluation performed by a treating physician in the first instance, it will not address the issue again in its discussion of each of the Plaintiff's remaining arguments.

She noted that Dr. Moon was a treating physician, and as such, his opinion was entitled to controlling weight, provided it was well-supported and consistent with the record evidence. (R. at 16.) However, she assigned his opinion "little weight" because, as she expressly detailed in her decision, it was brief, unsupported, and inconsistent with the record evidence. (R. at 16-17.)

Plaintiff further contends that the ALJ erred in giving "significant weight" to the opinions of the non-examining agency physicians. (Pl.'s Mem. at 19-20.) Specifically, Plaintiff asserts that the agency physicians did not review sufficient medical records of the relevant time period. (Id.) State agency physician, Dr. Kadian, reviewed the record on March 20, 2007. (R. at 342-47.) As earlier noted, Plaintiff had initially alleged an onset date of August 25, 2006, but later changed the onset date to January 1, 2007 (because he worked in December 2006),[8] and again changed the date to July 1, 2007 (because Plaintiff was receiving unemployment compensation benefits in the interim). At the time Dr. Kadian rendered his opinion, the records he relied on (dating from October 2006 to January 2007) were from the relevant time period. Moreover, an additional state agency physician, Dr. Amos, reviewed the record in December 2007 and, with the benefit of more recent record evidence, he concurred with Dr. Kadian's assessment that Plaintiff had the RFC to perform light work. (R. at 380.)

A review of the record demonstrates that the ALJ properly evaluated the brief and unsupported opinion of Dr. Moon. The Court, accordingly, recommends a finding that the ALJ's decision regarding Dr. Moon's opinion is supported by substantial evidence and application of the correct legal standard.

**2.      Plaintiff contends that the Appeals Council failed to consider new and material**

---

[8] Plaintiff did so at the hearing before the ALJ on January 6, 2009.

**evidence.**

Plaintiff asserts that the Appeals Council erred by failing to consider new and material evidence supplied by the Plaintiff; namely, two functional evaluations prepared by Drs. Moon and Moroianu in May 2009, after the issuance of the ALJ's decision. (Pl.'s Mem. at 20-21.) The Appeals Council must consider additional evidence in deciding whether to grant review, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."[9] Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). "Evidence is new . . . if it is not duplicative or cumulative." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome [of the ALJ's decision]." Id. Accordingly, the Appeals Council must consider additional evidence if it is new, material, and within the specified time period; it is not, however, required to grant review of the ALJ's decision simply because of the existence of "new," but merely cumulative evidence. Id. at 95.

In Wilkins v. Secretary, Department of Health & Human Services, the claimant had requested that the Appeals Council consider a letter from her treating physician that was prepared after the ALJ's decision. Id. at 94. The ALJ had found that the Plaintiff was disabled beginning on March 28, 1987, but not earlier, because the record contained no expert corroboration of her impairment earlier than that date. Id. The letter from the claimant's treating physician that the claimant sought to have considered by the Appeals Council stated that her

---

[9] In addition to demonstrating that the evidence is new and material, a claimant seeking remand on the basis of new evidence must also establish good cause for his or her failure to timely present such evidence. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). However, there is no requirement that a claimant establish good cause when seeking to present new evidence before the Appeals Council. Id.

depressive condition had been consistent since at least December 31, 1986. Id. The Fourth Circuit held that the Appeals Council properly considered the letter because it was both "new" and material. Id. at 96. Specifically, the Fourth Circuit noted that no other evidence addressed the issue of the plaintiff's depression for the subject period from December 31, 1986 through March 28, 1987; and the letter could reasonably have changed the ALJ's conclusion that the plaintiff was not disabled prior to the latter date (March 28, 1987). Id.

Here, the Appeals Council considered the additional functional evaluations prepared by Drs. Moon and Moroianu, but found that they provided "information that is similar to earlier opinions from these sources already of record and addressed by the Administrative Law Judge on pages 7-8 of the hearing decision." (R. at 2.) The Appeals Council accordingly concluded that the additional evidence did not provide a basis for altering the ALJ's decision. (Id.) Unlike the letter in Wilkins that provided evidence that the claimant's disability may have existed earlier than the date determined by the ALJ, the evidence supplied by Plaintiff was merely cumulative insofar as the physicians' opinions are based upon the same objective evidence already considered by the ALJ. (R. at 514-20, 529-34.) It is unlikely that either, or both, of these opinions would have altered the outcome of the ALJ's decision because the ALJ considered the same objective evidence relied upon by the physicians and concluded that it did not support Plaintiff's claim of disability. Therefore, Plaintiff's additional evidence is neither "new," nor material, and the Appeals Council did not err in declining to reconsider the ALJ's decision based upon the submission of the additional evidence.

3. **Plaintiff contends that the ALJ improperly evaluated the Plaintiff's credibility.**

Plaintiff further contends that the ALJ failed to properly evaluate his credibility. After

step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations,

they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, Plaintiff testified that he suffered from anxiety as well as pain in his hips, knees, feet, and hands.  (R. at 44, 59-60.)  He explained that his feet "swell up like footballs."  (R. at 44.)  Plaintiff further testified that his symptoms were exacerbated by dampness, rain, and cold weather and that the prescribed medication made him drowsy and had caused him to gain weight.  (R. at 44-45, 49, 52.)  When asked about his ability to manipulate objects with his hands, Plaintiff responded that he could hold a bottle of water with one hand while twisting the cap with the other, he could pick up a pen, and he could hold a knife and fork to cut meat; but that he could not pick up coinage, and he had difficulty holding a pen to write. (R. at 49, 51.)  He also stated that he could walk for approximately fifteen minutes, sit for thirty minutes, and walk for fifteen minutes, but that if he stood for longer than fifteen minutes, he

would feel sharp pains in his feet, hands, and hips. (R. at 52.) When asked about his daily activities, Plaintiff stated that he could not vacuum, rake leaves, weed the garden, do laundry, or cook; but that he could load and unload the dishwasher, take the trash out if it were not too heavy, cut the grass using a riding lawn mower, prepare simple meals (such as a sandwich or a bowl of cereal), and dress himself. (R. at 50-51.) Plaintiff testified that he was the primary caretaker for his granddaughters (ages six and seven at the time of the hearing) after school until his wife returned home from work, but that "they take care of themselves," and he only needed to "make sure they don't get into nothing." (R. at 47-48.) Plaintiff has sought employment since he hurt his knee because, as the Plaintiff testified, his doctor told him not to work. (R. at 44.) In regard to his complaint of anxiety, Plaintiff testified that he had received counseling (four times) with his wife in order to learn how to cope with his condition. (R. at 51.)

Plaintiff contends that under Fourth Circuit precedent he was "entitled to rely exclusively on subjective evidence," i.e. his hearing testimony, because he "met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed." (Pl.'s Mem. at 22.) In so arguing, Plaintiff relies on Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), but he misstates the Fourth Circuit's standard for evaluating a claimant's credibility as articulated therein.

In Hines, the claimant suffered from Sickle Cell Disease, which causes those afflicted to suffer from acute episodes of pain, but the disease rarely produces objective medical evidence of that pain. Hines, 453 F.3d at 560-61. The claimant in Hines was unable to produce evidence of his debilitating pain, and the ALJ refused to credit the claimant's subjective complaints of pain without such evidence and denied the claim for benefits. Id. at 563-64. The district court

16

reversed the ALJ's denial of benefits, and the Fourth Circuit affirmed the district court's

reversal, on the basis that the ALJ had applied an incorrect legal standard when he required the

plaintiff to present objective evidence of his pain.  Id.  The Fourth Circuit found that the plaintiff

had satisfied the first step of the Craig test by providing objective medical evidence of a

condition reasonably likely to cause the pain claimed, and therefore, the plaintiff was entitled to

rely exclusively on such subjective evidence to satisfy the second part of the Craig test, i.e., that

his pain was so continuous and/or so severe that it prevented him from working a full eight hour

day.  Id. at 565.  The Court qualified its finding however, stating:

> While objective evidence is not mandatory at the second step of the test, "[t]his is
> not to say, however, that objective medical evidence and other objective evidence
> are not crucial to evaluating the intensity and persistence of a claimant's pain and
> the extent to which it impairs her ability to work.  Although a claimant's
> allegations about her pain may not be discredited solely because they are not
> substantiated by objective evidence of the pain itself or its severity, they need not
> be accepted to the extent they are inconsistent with the available evidence,
> including objective evidence of the underlying impairment, and the extent to
> which that impairment can reasonably be expected to cause the pain the claimant
> alleges she suffers."

Id. (quoting Craig v. Chater, 76 F.3d at 595).  Because there was no evidence in the record that

was inconsistent with the claimant's statements regarding his pain, the Fourth Circuit held that

he was entitled to rely exclusively on his statements as evidence of the intensity and persistence

of his symptoms.  Id. at 565.

Here, however, the Plaintiff was not entitled to simply rely on his statements as evidence

of the extent of his symptoms because his statements were inconsistent with the available

evidence of record.  Specifically, as the ALJ noted in her decision, diagnostic examinations of

the Plaintiff were essentially normal.  (R. at 16, 277-95, 357-75.)  Several medical examinations

revealed no synovitis in the Plaintiff's upper or lower extremities, and both of his knees had full

range of motion with no effusion, warmth, or erythema.  (R. at 16, 454-85, 492-511.)  Moreover, Dr. Moroianu opined on two separate occasions that there was a discrepancy between the Plaintiff's allegations of pain and the doctor's physical findings in his examinations of the Plaintiff.  (R. at 16, 404, 495.)  Additionally, Plaintiff indicated that he was nevertheless able to prepare simple meals, load and unload the dishwasher, take out the trash when it was not too heavy, mow the lawn with a riding mower, and drive short distances.  (R. at 16, 173-80.)

It is clear from the ALJ's opinion that she performed a thorough analysis of both the subjective and objective medical evidence presented to her in making her determinations as to Plaintiff's credibility and RFC.  The ALJ performed the required <u>Craig</u> analysis and provided an explicit rationale to support her conclusions.  Specifically, the ALJ found that the Plaintiff had the severe impairment of psoriatic arthritis, but that the impairment did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-13.)  The ALJ then found that Plaintiff's impairment "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  (R. at 15.)  The ALJ concluded in the same regard that the medical evidence, the conservative nature of Plaintiff's medical care, and his written and oral statements about his activities of daily living were inconsistent with the amount of pain he allegedly experienced and served to diminish his credibility.  (R. at 15-16.)  The ALJ nonetheless gave some deference to his allegations of pain by limiting him to "light" work.  (R. at 14-17.)  She further credited his allegations of pain to the extent that she found that his symptoms would be exacerbated by dampness and cold temperatures, and limited his RFC accordingly.  (R. at 14-17.)

Based upon the foregoing, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and application of the correct legal standard.

**4.     Plaintiff contends that the ALJ relied upon flawed vocational expert testimony.**

Finally, Plaintiff argues that the ALJ relied upon flawed vocational expert testimony in reaching his decision.  (Pl.'s Mem. at 23-24.)  Specifically, Plaintiff contends that the expert's testimony was flawed to the extent that it was based upon the ALJ's RFC determination, which according to Plaintiff, was "based upon the opinions of the non-examining physicians who reviewed a severely incomplete record and failed to properly account for the limitations given by the treating physician, which were consistent with [the Plaintiff's] testimony."  (Id.)  Therefore, Plaintiff's argument is, in essence, that his RFC was improperly determined.

 After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow the two-step analysis discussed by the Court above.  Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96- 7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).

The Court has already discussed each of Plaintiff's arguments for asserting that the ALJ's

RFC determination was flawed. Specifically, the Court has addressed the ALJ's reliance on the opinions of the state agency physicians, the ALJ's decision to discredit the opinion of one of Plaintiff's treating physicians (Dr. Moon), and the ALJ's analysis of the credibility of Plaintiff's subjective complaints of pain. The Court discerns no error by the ALJ in evaluating each of these sources of evidence on which the ALJ based his RFC determination. Plaintiff makes no further argument in support of his position that the RFC determination was flawed. To the extent that the Court has already determined that the ALJ properly evaluated the medical evidence and Plaintiff's subjective testimony, and based her RFC determination on that objective medical evidence and claimant's credible complaints, the Court recommends a finding that the ALJ's RFC determination, and therefore the hypothetical posed to the VE, were proper and supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) and motion to remand (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____

DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date:_ May 27, 2010_
Richmond, Virginia